Good morning, honors. Richard Rainer from the Federal Public Defender's Office in Tucson, Arizona. I represent Randy Pates. I'd like to reserve five minutes of my time. The mental condition of Randy Pates is an issue that has been raised repeatedly in the Senate. I'm going to be speaking in this case at all stages of the case. Before the trial court, in a motion to suppress the statements during the course of the trial in attempting to introduce evidence of his mental condition during the course of the trial and trying to request a diminished capacity, I would like to reserve five minutes of my time to address the issue. I'm going to be  Well, you mentioned that the confidential is voluntary. Well, I would say that the district court basically said that there's nothing to deter. And that's why they're not going to grant relief in terms of a motion to suppress,  and they're not going to grant relief in terms of a motion to suppress.  I think the question is, what happens to the waiver? You have someone who, even if they didn't know that he was vulnerable, if someone where they, this person was arrested at 1135 in the morning, they're questioning him at 6 p.m. They go on, depending on whose, which government witness you believe, they went on to either 640 or until 8 p.m. And this was a person who was diabetic. They just didn't feed him. Whether or not they knew he was diabetic, they didn't feed him. And that's clear from the record. Right, but that doesn't necessarily impact mental capacity. There's no evidence in the record on that. Well, but what they did, though, is they used, for example, the behavioral analysis interview, which is a method of psychological persuasion that's used as part of the Reid method. And part of the problem is that we were limited in what we could ask on cross-examination of the interrogating agent, because the district court said you're stuck with what the agent admits. So the agent said, well, I didn't use the Reid method of interrogation. I didn't use interrogation at all. I merely used an interview. And because there was such severe limitation on our cross-examination, we weren't able to bring out more of that at trial. But and also I would point out that at trial that the court limited bringing out this agent's notes. We asked for those to be produced, and they weren't. They were not produced, and the court declined to order production. During trial, the court, I would suggest, erred in keeping out and really gutting the essence of this case, which is you have a person who is of subnormal intelligence, low intellectual functioning, who's on social security disability in part for his mental illness, and yet it's not made a part of the case. And it's not for the defense lack of trying. We attempted to bring in his sister. We talk about how he's always been this way. It's not like this is just some recent thing that he but he's always been slow. And we and that's compounded by the fact that the court on its own decided to give a limiting instruction relating to the testimony of the defense neuropsychologist. They said he the court said that the jury could only consider that for the purposes of the circumstances of the statement. And the court pointed to 18 U.S.C. 3501 and says, well, we're required to allow the jury to hear that, but we don't have to allow this testimony of the neuropsychologist concerning the defense, which is of diminished capacity. And so later on, when the defense said we understand that the court gave a limiting instruction, but now we would suggest that there's another admissible purpose for the testimony of the defense neuropsychologist and it should be permitted that the jury could consider that and the defense could argue that. Instead, the district court denied the instruction and which really it goes to the theory of the defense. And when a defense theory of the defense, when a theory of the defense instruction goes to the heart of the defense, it's supported by some facts, it's a correct statement of the law, and it's not adequately covered by other instructions, then it's the court per se has erred. And I would suggest that's what the court did here, because they completely prevented the defense from arguing and presenting a defense of diminished capacity, because there really were only two things that could have been presented. One was, in terms of factually, to support that. One was the testimony of Dr. Allender, in which there was a limiting instruction, and the other was of my client's sister, who was precluded completely. And so based upon that, we would suggest that the district court erred. Finally, when it came down to sentencing, the district court, I would suggest, skipped a step. The district court, when it came to sentencing, the district court asked, are there any guideline-relevant objections? And counsel pointed out to the district court, well, none other than the objection we filed to the PSR, which failed to take into account the diminished capacity guideline, 5K2.13. And what the court did was didn't consider that as a departure. And I would suggest that the guidelines have been recently, that particular guideline has been recently amended for November 1st of this year to really clarify. It's not labeled a clarification, but in essence, it does clarify. And the guideline makes reference to Irizarry v. United States, in which the U.S. Supreme Court has said there is a distinction between a departure and a guideline. And I would suggest that the district court lost valuable data information and failed to respect the institutional role and the valuable information that these departures provide by failing to go through the departure analysis. And in that respect, the district court erred. And if there are no further questions, I'd like to reserve the balance of my time. If there's a question right now, I'd be happy. Thank you, Your Honor. Thank you. Ms. Cabanillas. Good morning, Your Honor. May it please the Court. I'm Chris Cabanillas from the District of Arizona. The district court in this case did not err, either in admitting the confession or at trial. It's important to recognize that the defendant's defense here was simply that he didn't know the drugs were there. The confession showed he knew the drugs were there. So it was all about attacking that confession. And he did it before trial as well as at trial. The jury had the opportunity to hear all this evidence. There was sort of an instant replay in terms of Perez's testimony and all the different things from Dr. Allender that the defendant used to try to establish that the confession was not – should not be considered by the jury. The defendant states that the district court gutted his case. That's incorrect to the extreme. The district court did admit all this evidence from Dr. Allender and having him testify. When it comes to the diminished capacity instruction, nowhere below did the defendant ever establish that any mental issues meant he didn't know the drugs were there. Remember, there was a stipulation that the defendant drove the RV with the marijuana. And there's a picture in the government's SCR on that. This all became did he know it was there. So the diminished capacity instruction, there was never any evidence from any source, including Dr. Allender. And I'd like to point this court to something in the record. At ER 417 to 418, at no time did Dr. Allender testify that the defendant's mental condition meant somehow he didn't know the drugs were there. The question is, in your summary, this is the government asking this, you didn't come up with any sort of diagnosis of what his mental state was on December 16, 2007. Did you? And the answer is, I did not. And the question is, you could not, correct? And he says, I could not. So there's none of that evidentiary support for that kind of instruction. When was the questioning when he confessed? I'm sorry. Say that again. When was he questioned? When did he make his confession? Oh, he was questioned after. He was questioned at the port. At the port. Yes. So and there is, you know, this blurred out that he also says, too, which doesn't seem to be a product of interrogation anyway, that part about if this has anything to do with drugs, I have nothing to do with it. And you have all this evidence from both at the suppression hearing and at trial demonstrating that this was done in an interview room. There's a photograph in the supplemental excerpts on that. You know, no threats, no coercion. There's actually expressed testimony that there was no psychological coercion, there was no bad cop, good cop, no pressing interrogation. It's one of the reasons why the Reid method, as the district court noted, you know, the defense was allowed to get into some of it, but once the agent testified that all he did was interview him, he didn't interrogate him, a lot of those steps became irrelevant. Now, the defendant was allowed to get into the first step, dealing with positive statement, so he was allowed to present some of this testimony and evidence. But the problem with the instruction is that basically the whole defense is that he didn't know. And then you get up to the instructional stage, and the one instruction that would have allowed him to argue that theory is taken away. Now, I agree with you that the evidence may be thin, but why wasn't it enough to get an instruction on the theory of the case? Because there was never any connection made. And, again, it's real important to focus on how it is that this was argued to the defense. If you look at the opening and the closing, at no time does the defendant contend that Dr. Allender's testimony meant that he didn't know. At all times he was saying Dr. Allender's testimony means my confession's involuntary. I'm going to ask you to find that it's involuntary. And that's real important. As far as his theory of the defense, it was that my confession was no good. And he got the statement instruction, and that one says you're entitled to, you know, use the weight as you see fit and consider the defendant's acts and omissions and whatnot. And he also got the knowledge instruction. Had he, again, this is a matter where there's not only no evidence, but there's no argument, that Dr. Allender's testimony equaled no knowledge. Well, why isn't he entitled to an instruction that, in essence, was that he couldn't have known and he couldn't have knowingly confessed to knowing because of a diminished capacity? I think actually Your Honor's question kind of answers it. I mean, he was able to argue my jury, don't consider my confession because of all the things that he says the agents did, which, again, there's no testimony to that. He is allowed to argue that. He is given that ability. But the thing that's so important here is he never made that evidentiary link or even argument link that Dr. Allender's testimony equals I didn't know what I was doing. It was Dr. Allender's testimony meant my confession, jury, you shouldn't credit that. So his theory of the defense has to be supported by something, I take it. As this Court has noted multiple times, there has to be some evidence to support that theory. But again, the district court said, well, your basis of the district court's ruling was what, that this is not related to the offense? He said the quote is, Your Honor. There just isn't any diminished capacity as far as the actual crime itself. And I'm quoting at ER 451 and 452. There is no evidence of that whatsoever. There's the testimony of the doctor regarding previous mental evaluations. There's an absence of evidence that he was suffering from diminished capacity at the time the crime took place. The doctor didn't offer any testimony that in committing or engaging in the conduct that is the basis for the charges, the defendant suffered from diminished capacity. So that link isn't made. And again, I read to you the record from 417 to 418 where the doctor says no. And, you know, the doctor also said, I can't comment or even conclude whether this confession was voluntary. Now, I think the defense probably was hoping for some better testimony there, but, you know, the record is what the record is. In terms of the other arguments the defendant made with sentencing and whatnot, oh, you asked a question, I think, at the beginning, Judge Schroeder, about the defendant's cases. But, you know, there's a plethora of cases from this Court talking about how mental condition is not going to override or constitute involuntariness in the absence of coercion. And that's the biggie here. There was just simply no coercion and no clear error in the Court's factual findings on that. And at ER 114, the agent specifically testifies, one of them, that there was no psychological coercion either. So, you know, the magistrate heard the testimony. The district court heard it. The trial testimony supports it as well. So we'd ask that the Court affirm. Are there any questions? Do you mind talking about the Jenks Act issue? Sure. When it comes to the rough notes, Your Honor, the district court didn't abuse its discretion in disclosing or, excuse me, the district court didn't err in determining they were not disclosable. First, there was nothing in the notes that wasn't in the report. The jury heard that, too. And Agent Parris testified to that. He testified to what? He testified that everything that's in the notes are in the report. He was asked specifically, is there anything in your notes that is not in the report? And he said no. And the reference for that is at the hearing, ER 135, and at trial, ER 303 to 304. Additionally, the magistrate specifically asked the government, hey, I want you to go look at those notes and I want you to go look at the report and let me know if there's any Brady. That was at ER 69, that order. The government came back and said, we've looked at the notes, we've looked at the report, and there's no Brady in it. And that's at CR 80. That was a filing that they did in response to that. Also, this was not a verbatim transcript. Parris testified to that as well, both at the hearing and at trial. That's at ER 336 and ER 135 to 36. So, again, all those reasons, if you look at Reed, this Court's case that we quote in our answering brief, that pretty much ends the issue. And the Johnson case, the defendant relies upon, you know, that a couple of things are missing. Frankly, a lot of what I just mentioned to you is not in Johnson. So we'd respectfully ask the Court to affirm on that ground, too. And there's no prejudice, of course. So the distinction between this case and Johnson is? Would be a couple of things. I think in Johnson, they also note that the agent testified that the notes were basically in the report. But two things. Here we have also Agent Parris saying, I didn't take verbatim notes. I didn't write out the questions. I just wrote out a lot of the answers. And everything that's in my notes is in my report. In addition, we have that Brady inquiry. So I think in Johnson, what they were doing was, you know, telling the Court, you need to engage in a further inquiry here. Well, here the magistrate did so. The government answered it, and the defendant never came back after that and said, we don't believe you, Gov. And in Pisoli, this Court noted that it assumes the government acts properly with regard to Jenks. Correct me if I'm wrong, but neither the magistrate judge nor the district judge looked at the notes. Is that true? Correct. But it wasn't required to get under read. They both just relied on the government's assertion that there was nothing different. The assertion as well as Parris' testimony about how it wasn't a verbatim transcript, because that's part of the Jenks inquiry as well. And then, of course, when the notes are encompassed in the report, the defendant can't really claim that there's anything in those notes that he didn't get in terms of disclosure. And in ER 134 to 135, it also notes the defendant was disclosed those reports which contained, again, nothing in the notes that's not in the report was the testimony. Unless the Court has any more questions. I would respectfully ask the Court to affirm. Thank you. Thank you. Dr., the defense neuropsychologist could not have come to a conclusion about mental state. Even if the Court had not given the limiting instruction, it would have gone too far and really invaded the province of the jury to decide an element of the offense or to basically define for the jury the definition of the jury instructions. But the problem is that we were not allowed to do any of that. And if you search in the closing arguments, counsel didn't make the arguments that Dr. Allender's testimony showed diminished capacity or showed lack of knowledge or showed lack of specific intent because defense counsel was unable to do so. It would have been improper, a closing argument, when the district judge gave an instruction, a limiting instruction to the jury and told them that you are to consider this only for the purposes of the voluntariness of the statement and for no other purpose. And then when counsel again asked the Court to reconsider the issue by requesting a jury instruction on diminished capacity, and the district court says no, then and when the sister is not allowed to testify, there is no admissible or no evidence admitted at the trial that defense counsel can use in closing argument to say that the diminished capacity or his mental condition had anything to do with the mens rea. So basically we're kept from doing that. And in terms of this confession, what you have is very differing stories even between the same agent. I mean, his testimony at the evidentiary hearing was that he just asked Mr. Pates multiple times, three to four times he accused him of lying. And at trial he said, oh, well, he just accused him of lying one time and then he confessed. And so that really makes the notes that much more important. And the problem is that there was no in-camera review, as was required, and so we don't And so the details are lacking. The way that the report was produced was this happened on a Sunday. There were just those notes that were written, and then it took until the following Thursday for the report to be written. And so those notes are, in fact, very important to what actually transpired during the course of that confession. But in essence, the ---- Let's assume there's a jank there. What's the prejudice? Well, the prejudice is, well, I mean, the Court could remand and ask the District Court to look at it and see whether or not there was anything that made a difference. But given that you have this agent who can't even keep his story straight from the evidentiary hearing to the trial, it could have been evidence relating to impeachment or to the motion to suppress, but we'll just never know because the District Court didn't look at it. And that's what it was required to do. And so I would suggest that it's really a per se error. Does the Court always have to look at the notes? Well, I would suggest that, yes, that they do have to look at them when ---- and I would suggest that, you know, the arguments, well, this wasn't janks, well, but the Court's could possibly have been Brady, but we'll never know because the District Court didn't look at it. And based upon all of this together, I would suggest that the defense was or the issue of Mr. Pate's mental capacity was just never taken into account at all stages. And thus it would be reversed. Thank you. Thank you. Any further questions? No. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Thomas, Gould